## Political Action Committees

KANE, Attorney General, YAKOWICZ, Solicitor General, and BREDT, Deputy Attorney General, December 6, 1976—You have requested our advice regarding the interpretation of section 1605 of the Pennsylvania Election Code of June 3, 1937, P.L. 1333, as amended, 25 P.S. §3225, and the possible conflict of that section with the Federal Election Campaign Act of 1971, as amended.[1] Specifically, you inquire as to whether a "Political Action Committee," lawfully organized pursuant to 2 U.S.C.

---

1. Federal Election Campaign Act of 1971, Pub. L. 92-225, §§301-311, 86 Stat. 3 (1972), as amended by the Federal Election Campaign Act Amendments of 1974, P.L. 93-443, §201-407, 88 Stat. 1263, Title 2, U.S.C., and by the Federal Election Campaign Act Amendments of 1976, P.L. 94-283, as codified in Titles 2 and 26 of the United States Code.

§441b[2] for the purpose of influencing Federal elections and using corporate and unincorporated association funds to organize and administer its political fund, can, at the same time, legally contribute to candidates seeking non-Federal office in Pennsylvania.

Section 441b of Title 2 of the United States Code provides:

"(a) It is unlawful for any national bank, or any corporation organized by authority of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office, or for any corporation whatever, or any labor organization, to make a contribution or expenditure in connection with any election at which presidential and vice presidential electors or a Senator or Representative in, or a Delegate or Resident Commissioner to, Congress are to be voted for, or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices, or for any candidate, political committee, or other person knowingly to accept or receive any contribution prohibited by this section, or any officer or any director of any corporation or any national bank or any officer of any labor organization to consent to any contribution or expenditure by the corporation, national bank, or labor organization, as the case may be, prohibited by this section.

---

2. Formerly codified in 18 U.S.C. §610 by the 1971 Act and the 1974 Amendments. It should be noted that this section was deleted from Title 18 by the 1976 Amendments and added to Title 2. Former section 608-617 of Title 18 now appear as new sections 441a-441j in Title 2.

"(b)(1) For the purpose of this section the term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

"(2) For purposes of this section and section 791(h) of Title 15, the term contribution or expenditure shall include any direct or indirect payment, distribution, loan, advance, deposit, or gift of money, or any services, or anything of value (except a loan of money by a national or State bank made in accordance with the applicable banking laws and regulations and in the ordinary course of business) to any candidate, campaign committee, or political party or organization, in connection with any election to any of the offices referred to in this section, but shall not include (A) communications by a corporation to its stockholders and executive or administrative personnel and their families or by a labor organization to its members and their families on any subject; (B) non-partisan registration and get-out-the-vote campaigns by a corporation aimed at its stockholders and executive or administrative personnel and their families, or by a labor organization aimed at its members and their families; and (C) the establishment, administration, and solicitation of contributions to a separate segregated fund to be utilized for political purposes by a corporation, labor organization, membership organization, cooperative, or corporation without capital stock.

"(3) It shall be unlawful —

"(A) for such a fund to make a contribution or

expenditure by utilizing money or anything of value secured by physical force, job discrimination, financial reprisals, or the threat of force, job discrimination, or financial reprisal; or by dues, fees, or other moneys required as a condition of membership in a labor organization or as a condition of employment, or by moneys obtained in any commercial transaction;

"(B) for any person soliciting an employee for a contribution to such a fund to fail to inform such employee of the political purposes of such fund at the time of such solicitation; and

"(C) for any person soliciting an employee for a contribution to such a fund to fail to inform such employee, at the time of such solicitation, of his right to refuse to so contribute without any reprisal.

"(4)(A) Except as provided in subparagraphs (B), (C), and (D), it shall be unlawful —

"(i) for a corporation, or a separate segregated fund established by a corporation, to solicit contributions to such a fund from any person other than its stockholders and their families and its executive or administrative personnel and their families, and

"(ii) for a labor organization, or a separate segregated fund established by a labor organization, to solicit contributions to such a fund from any person other than its members and their families.

"(B) it shall not be unlawful under this section for a corporation, a labor organization, or a separate segregated fund established by such corporation or such labor organization, to make 2 written solicitations for contributions during the calendar year from any stockholder, executive or adminis-

trative personnel, or employee of a corporation or the families of such persons. A solicitation under this subparagraph may be made only by mail addressed to stockholders, executive or administrative personnel, or employees at their residence and shall be so designed that the corporation, labor organization, or separate segregated fund conducting such solicitation cannot determine who makes a contribution of $50 or less as a result of such solicitation and who does not make such a contribution.

"(C) This paragraph shall not prevent a membership organization, cooperative, or corporation without capital stock, or a separate segregated fund established by a membership organization, cooperative, or corporation without capital stock, from soliciting contributions to such a fund from members of such organization, cooperative, or corporation without capital stock.

"(D) This paragraph shall not prevent a trade association or a separate segregated fund established by a trade association from soliciting contributions from the stockholders and executive or administrative personnel of the member corporations of such trade association and the families of such stockholders or personnel to the extent that such solicitation of such stockholders and personnel, and their families, has been separately and specifically approved by the member corporation involved, and such member corporation does not approve any such solicitation by more than one such trade association in any calendar year.

"(5) Notwithstanding any other law, any method of soliciting voluntary contributions or of facilitating the making of voluntary contributions to a separate segregated fund established by a cor-

poration, permitted by law to corporations with regard to stockholders and executive or administrative personnel, shall be permitted to labor organizations with regard to their members.

"(6) Any corporation, including its subsidiaries, branches, divisions, and affiliates, that utilizes a method of soliciting voluntary contributions, shall make available such method, on written request and at a cost sufficient only to reimburse the corporation for the expenses incurred thereby, to a labor organization representing any members working for such corporation, its subsidiaries, branches, divisions, and affiliates.

"(7) For purposes of this section, the term 'executive or administrative personnel' means individuals employed by a corporation who are paid on a salary, rather than hourly basis, and who have policymaking, managerial, professional, or supervisory responsibilities."

This language is a codification of prior case law and has been interpreted to permit the formation of political action committees (PACs) by labor unions and corporations. A PAC is an entity, legally separate and distinct from its sponsoring corporation or labor union, which is established for the purpose of soliciting contributions to and making expenditures from a segregated fund, which fund is to be used for political purposes: Pipefitters Local Union No. 562 et al. v. United States, 407 U.S. 385, 401, 92 S. Ct. 2247, 2257 (1972). A PAC must be separate from its sponsoring corporation or union only in the sense that there must be a strict segregation of its moneys. There is no requirement that the PAC be formally or functionally independent of the control of its sponsor organization: Pipefitters, supra. Moreover, this provision has

been interpreted by the Federal Election Commission (FEC) as authorizing a sponsoring corporation or labor organization to use funds from its general treasury to establish and administer a PAC: Advisory Opinion 1975-83, Federal Register, Volume 40, No. 233, December 3, 1975.[3] Although sponsoring organizations cannot use their general treasury funds to directly contribute to political campaigns, under the Federal Act other primary and general election expenses, (i.e., office space, postage, telephone bills, etc.) can be paid by the corporation or labor organization itself.

The Pennsylvania Election Code of June 3, 1937, P.L. 1333, provides, in pertinent part:

"The words 'political committee' shall include every two or more persons who shall be elected, appointed or chosen, or who shall have associated themselves or cooperated for the purpose, wholly

---

3. Prior to the passage of 2 U.S.C. §437c, 90 Stat. 475, 476, 481, reconstituting the Federal Election Commission, the United States Supreme Court stripped the commission of its enforcement authority because its members were not selected according to the mandate of the United States Constitution, Art. II, sec. 2, Cl. 2. However, FEC Advisory Opinions issued prior to the date of that decision remain viable: Buckley v. Valeo, U.S. —, 96 S. Ct. 612 (1976). The court stated:

"It is also our view that the Commission's inability to exercise certain powers because of the method by which its members have been selected should not affect the validity of the Commission's administrative actions and determinations of this date, including its administration of those provisions, upheld today, authorizing the public financing of federal elections. The past acts of the Commission are therefore accorded de facto validity, just as we have recognized should be the case with respect to legislative acts performed by legislators held to have been elected in accordance with an unconstitutional apportionment plan [Citation omitted]": 96 S. Ct. 612, 693 (1976).

or in part, or raising, collecting or disbursing money, or of controlling or directing the raising, collection or disbursement of money for primary or election expenses". 25 P.S. §3221(c)

"The words 'primary expenses' shall include all expenditures of money or other valuable things made, and liabilities incurred, in furtherance of or in respect to the candidacy of any candidate for nomination at a primary for public office, or to defeat the candidacy of any candidate for nomination to public office, whether such expenditures are made before, during or after the primary." 25 P.S. §3221(d).

"The words 'election expenses' shall include all expenditures of money or other valuable things made, and liabilities incurred, in fortherance of or in respect to the election of any candidate for election to any public office, or to defeat the candidacy of any candidate to public office, whether such expenditures are made before, during or after the election." 25 P.S. §3221(e).

"No candidate or treasurer of any political committee shall pay, give or lend or agree to pay, give or lend, directly or indirectly, any money or other valuable thing or incur any liability on account of, or in respect to, any primary or election expenses whatever, except for the following purposes:

"First, For printing and traveling expenses, and personal expenses incident thereto, stationery, advertising, postage, expressage, freight, telegraph, telephone and public messenger service.

"Second, For the rental of radio facilities, and amplified systems.

"Third, For political meetings, demonstrations

and conventions, and for the pay and transportation of speakers.

"Fourth, For the rent, maintenance and furnishing of offices.

"Fifth, For the payment of clerks, typewriters, stenographers, janitors, and messengers actually employed.

"Sixth, For the transportation of electors to and from the polls.

"Seventh, For the employment of watchers at primaries and elections to the number and in the amount permitted by this act.

"Eighth, For expenses, legal counsel, incurred in good faith in connection with any primary or elections.

"Ninth, For contributions to other political committees." 25 P.S. §3226.

"(b) No corporation or unincorporated association or officer or agent thereof, whether incorporated or organized under the laws of this or any other state or any foreign country, except those formed primarily for political purposes or a political committee, shall pay, give or lend or authorize to be paid, given or lent, either directly or through any other person, or in reimbursement of any such payment, gift or loan by any other person, any money or other valuable thing belonging to such corporation or unincorporated association or in its custody or control, to any candidate or political committee for the payment of any primary or election expenses or for any political purpose whatever." 25 P.S. §3225(b).

"(c) Neither the provisions of this section, nor the provisions of section 1604(a) nor any other provisions of the laws of this Commonwealth shall

be deemed to prohibit direct private communications by a corporation to its stockholders and their families or by an unincorporated association to its members and their families on any subject; non-partisan registration and get-out-the-vote campaigns by a corporation aimed at its stockholders and their families or by an unincorporated association aimed at its members and their families; and the establishment, and administration by a corporation or an unincorporated association of a separate segregated fund which fund is to be created by voluntary individual contributions and to be utilized for political purposes, provided that any such separate segregated shall be deemed to be a political committee for the purposes of section 1607 of this act." 25 P.S. §3225(c).

The last-quoted section of the Pennsylvania Election Code was recently passed into law.[4] By its terms, a PAC is deemed to be a "political committee", and, subject to the general requirements in the Election Code for all political committees, may operate in Pennsylvania. Furthermore, it is apparent from a comparison between 2 U.S.C. §441b, supra, and section 1605(c), supra, that the Pennsylvania Legislature intended to provide for the creation of PACs for State elections that could function in conformity with those created pursuant to Federal legislation.

A comparison of section 1605(c) and that portion of 2 U.S.C. §441b which allows for the creation of PACs shows that the two provisions are almost identical, the only difference between them being that section 441b specifically provides for the solicitation of funds while section 1605(c) has no

---

4. Act No. 124 of July 1, 1976.

such specific provision. However, despite the absence of a specific provision dealing with the solicitation of funds, section 1605(c) does provide for direct private communications on any subject, by a corporation to its stockholders and their families and by an unincorporated association to its members and their families.

These direct private communications would include solicitations of contributions by corporations to stockholders and their families and solicitations of contributions by unincorporated associations to members and their families; however, they would not include solicitations for contributions by corporations to their employes.

This apparent oversight is resolved by the fact the section 441b is a codification of prior case law and that "corporations have traditionally solicited their employes for both political and nonpolitical purposes. Absent any express language in the statute or legislative history prohibiting such solicitations, it would be illogical to conclude that corporations could solicit only their stockholders and not their employees." FEC Advisory Opinion 1975-83, supra. Furthermore, the word "voluntary" in section 1605(c) is clearly analogous to the language in section 441b making it unlawful for a PAC to "make a contribution or expenditure by utilizing money or anything of value secured by physical force, job discrimination, financial reprisals, or the threat of force, job discrimination, or financial reprisal; or by dues, fees, or other moneys required as a condition of membership in a labor organization or as a condition of employment, or by moneys obtained in any commercial transaction." This provision can be relied upon to insure

that employe contributions will truly be unconstrained by corporate interference.

As to the solicitation of funds by a corporation's PAC from persons other than its stockholders and their families and by a labor organization's PAC from persons other than members and their families, we suggest that your office advise these organizations to follow the guidelines in section 441b with regard to Statewide as well as Federal candidates. Although Pennsylvania cannot require PACs to follow the Federal law in this regard, the failure to do so would require the formation of separate PACs for Pennsylvania and Federal candidates. In this regard, we note that Congree is becoming increasingly more active in the area of election law, and to the extent that the Pennsylvania Election Code overlaps with the Federal Election Campaign Act, we suggest that compliance with the Federal practice be encouraged.

To reiterate, political action committees, as that term is used in the context of 2 U.S.C. §441b and Pipefitters, supra, are political committees within the meaning of the Pennsylvania Election Code, and, subject to the general requirements for all political committees, may operate in Pennsylvania. Furthermore, as the contributions to a PAC are segregated from the general treasury of a corporation or unincorporated association and are created by voluntary contributions to be used for political purposes, a corporation or unincorporated association may use its general treasury funds for the establishment and administration of the PAC, and for the solicitation of contributions to the PAC.

We hope that the above explanation is helpful to you and we stand ready to answer any further questions on this matter if called upon to do so.